1  Thomas J. Nolan (SBN 48413)
   Shira Kieval (SBN 269409)
2
   **Nolan, Armstrong**
3  **& Barton, LLP**
   600 University Ave. \ Palo Alto, Ca. 94301
4  Tel. (650) 326-2980  Fax (650) 326-9704
   Attorneys for Defendant
5  Joshua Covelli

6  Graham Archer (SBN 262464)
7  Law Office of Graham Archer
   95 S. Market Street, Suite 300
8  San Jose, CA  95113
   P: 408-596-9451
9  F: 408-596-5657
   Attorney for Defendant
10 Ethan Miles

11

12                **UNITED STATES DISTRICT COURT**

13        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14                     **SAN JOSE DIVISION**

15
   UNITED STATES                  Case No. CR 11-00471
16
                 Plaintiff,       OBJECTIONS BY DEFENDANTS JOSHUA
17                                COVELLI  AND  ETHAN  MILES  TO
        v.                        CORRECTED  ORDER  RE:  PAYPAL'S
18                                MOTION  TO  QUASH  AND/OR  MODIFY
   JOSHUA COVELLI, ETHAN MILES    SUBPOENA  AND  FOR  PROTECTIVE
19                                ORDER (MARCH 15, 2013) (DKT. 469)
                 Defendants.
20

21         **OBJECTIONS TO THE ORDER OF MARCH 15, 2013 (DKT. 469)**

22 **I.      Statement of objections**

23      Objection One:  The Magistrate Judge clearly erred considering the untimely filed Motion

24 to Quash, and granting it in part, given partial production by PayPal and statements for more than

25 six months that it was willing and prepared to produce the remaining subpoenaed documents.

26      Objection Two:   The Magistrate Judge's rulings regarding admissibility and specificity

27 were contrary to law and clearly erroneous under the Supreme Court's holding in United States v.

28

Nixon, 418 U.S. 683 (1974) which requires only a "preliminary showing" regarding "potential evidentiary uses" for what the subpoenaed materials are "likel[y]" to contain – especially because expert testimony will be required at trial on the issues of loss determination and loss causation, and it is critical for defense experts and defense attorneys to review these documents prior to trial.

<u>Objection Three:</u>   The Magistrate Judge clearly erred by not modifying parts of the subpoena he found questionable, and acted contrary to the Due Process Clause, given his finding that many of the subpoenaed documents are highly relevant and the defendants have no other way to access the information contained in them.

## II.    Introduction

In this case, a large multi-national corporation asked the government to bring criminal charges against individuals who, in the eyes of the corporation, have made a nuisance of themselves.  Although the corporation is a single entity, it is not a person who can be interviewed by the FBI or subpoenaed to testify before a grand jury or at trial.  It speaks through many different people, representatives of the company, some of whom are clearly identifiable but many of whom are not.  Generally, it does so through statements contained in documents.  Likewise, the corporation does not have a "body" as such, but it does have a documented corporate structure and a documented physical structure.  It does not exist in a single place at any given time, but it does have documented physical locations and addresses.

In a corporate-driven prosecution, the corporation can choose to provide the government with certain documents, and withhold others.  The assistance that a corporate complainant provides to the government can assist the government greatly, and even relieve the government from the burden of conducting its own investigation.  This situation is ripe for abuse, as a corporation may select between documents that only it possesses when determining what to provide the government, for the purpose of telling only its side of the story, or even to mislead the government and finder of fact.

While the company may work closely with the government, it has no obligations to the government or to the targets of the investigation. The corporation has no obligation to ensure the defendants a speedy or fair trial. Most importantly, the corporation has no obligations to seek or disclose information that might be favorable to the accused, and should be expected to do exactly the opposite. A corporation requesting a criminal prosecution has only one incentive: to provide information that will make criminal prosecution most likely to occur. While the government does have such a duty under the *Brady* and *Giglio* line of cases, courts have rejected the argument that the prosecutor's duty applies where the information is in the hands of a private company.

In this case, the defendants believe that the corporation possesses certain specific documents that are relevant and necessary to defend the case. These documents will allow an expert to answer deceptively simple questions at the heart of this case: Who is PayPal? Where was PayPal during the alleged attack? What happened during the alleged attack? Was PayPal harmed? How badly? How does PayPal know? And, critically, are any of the defendants to blame? The simplicity of these questions, however, belies the difficulty of eliciting their answers from a multi-national corporation without the testimony of an expert.

The defendants have identified and described thirteen categories of documents that PayPal possesses and that an expert must be able to review before he can answer these deceptively simple questions. These documents constitute statements by the corporation about what happened during the alleged attack.[1] They constitute statements by the corporation regarding injury and loss, elements of the office.[2] They constitute statements by the corporation regarding its investigation of the alleged DDOS attack.[3] They also consist of records gathered during PayPal's investigation

---

[1] These documents are requested in Categories 1 and 7: "All documents . . . mentioning or relating to distributed denial of service attacks ("DDOS") on PayPal sites and systems occurring from November 20, 2010 to December 30, 2010."; and "All public communications . . . relating to the above referenced DDOS attacks."

[2] These documents are requested in Category 2: "All documents . . . relating to evaluation of loss or damages caused by DDOS attacks referenced above . . . ."

[3] These documents are requested in Categories 3, 5, and 6: "All documents . . . reflecting PayPal/eBay investigation of the above referenced DDOS attacks . . . ."; "All summaries of chat

OBJECTIONS TO CORRECTED ORDER RE: PAYPAL'S MOTION TO QUASH (MARCH 15, 2013);
*United States v. Covelli*, Case No. CR 11-00471

3

that were never turned over to the government.[4]  They document the corporation's network architecture – essentially describing the "body" of the corporation allegedly attacked by the defendants.[5]  They document the corporation's addresses in the electronic world – describing the "location" of the corporation when it was allegedly attacked.[6]  And they document the actual points of contact between the corporation and those who allegedly participated in a DDOS attack – thus describing the potential for injury, but not any actual injury.[7]

Because the government was not willing to acquire these documents and turn them over to the defendants, the defendants had a single recourse:  Rule 17.  In February 2012, and then in December 2012, individual defendants went before the magistrate court and made the required showings to obtain these documents in advance of trial.  They issued identical subpoenas to the corporation that identified the thirteen categories of documents that will allow experts to answer these questions and, as the defendants explained to the magistrate court, to answer them in a manner favorable to the accused.

---

room conversations prepared by PayPal employees, contractors or consultants."; and "All communications between PayPal employees, consultants or contractors and law enforcement relating to the above referenced DDOS attacks.

[4] These documents are requested in Category 4: "All chat room logs or recordings relating to the above referenced DDOS attacks gathered by PayPal/eBay employees, consultants or contractors or provided to PayPal/eBay by any third parties."

[5] These documents are requested in Categories 8 and 10: "Documentation of PayPal's network architecture as it existed in November and December 2010, including but not limited to network maps, CPU load sharing hardware and software, network traffic load sharing hardware and software, and security hardware and software."; and "The model information and hardware specification of all servers that received traffic as a result of the DDOS attacks referenced above."

[6] These documents are requested in Category 9:  "Documentation of the public and private IP addresses of all servers and network hardware that received traffic as a result of the above referenced DDOS attacks."

[7] These documents are requested in Categories 11, 12, and 13: "Individual and aggregate CPU load logs and other hardware claimed to have received traffic from the above referenced DDOS attacks."; "Individual and aggregate network load and traffic logs and reports of the routers, switches, and network cards or other network hardware claimed to have receive traffic from the above referenced DDOS attacks."; and "All information . . . collected by the Radware security devide between November 1, 2010 and December 31, 2010."

**OBJECTIONS TO CORRECTED ORDER RE: PAYPAL'S MOTION TO QUASH (MARCH 15, 2013);** _United States v. Covelli_, Case No. CR 11-00471

4

For over six months, the corporation, speaking through its designated legal representative, indicated first to one defendant, and then to another, and then to the magistrate court, that it was prepared to produce the documents. The only issue was a protective order.

Then, with one subpoena past due, and without leave of the magistrate, the corporation filed a motion to quash.

The magistrate court granted the motion to quash in significant part. The order quashed those parts of the subpoenas seeking statements by the corporation about what happened, about loss, and about its own investigation. The order quashed those parts of the subpoena seeking records describing the "body" of the corporation and the "location" of the corporation. The only documents that the corporation is required to produce are the records of the actual points of contact between the corporation and those who allegedly attacked it (Categories 11, 12, and 13).

The magistrate court erred when it quashed most of the subpoena. It erred in permitting the corporation to come to court on the day that production was do, and represent that it was in fact ready to produce the subpoenaed documents, but then later to move to quash on the grounds that such a production would be burdensome. It erred reconsidering and overruling both of its prior decisions that the defendants had made the required showings to obtain the documents. In doing so, the magistrate court allowed the corporation to usurp the role of prosecutor and make trial objections, and it considered them prematurely, without looking at any of the documents, and in speculative reliance on some (but not all) of the rules of evidence. Critically, the magistrate court did not consider the indispensable role that experts will play in this case, the necessity of allowing experts to review these documents before trial, the fact that experts may rely on hearsay materials in forming their opinions, and the fact that defense attorneys will not be able to cross examine prosecution experts without these documents. Finally, the magistrate court erred in quashing large portions of the subpoena rather than modifying them, given that many of the documents are highly relevant and the defendants have no other way to access the information contained in them.

# III. Procedural History

## A. Issuance of two subpoenaes and an order to show cause

Charges in this case were filed against all fourteen defendants on July 13, 2011. Dkt. 1.

Approximately seven months later, in February 2012, defendant Ethan Miles filed under seal a lengthy and detailed ex parte motion for a subpoena duces tecum to PayPal.[8] The Honorable Paul S. Grewal, U.S. Magistrate Judge, issued the requested subpoena, which Mr. Archer served in short order. *See* Dkt. 415-1 ¶ 2 (Decl. of Graham Archer).

In June 2012, after receiving no responsive documents and no response from PayPal, Mr. Archer applied to Magistrate Judge Grewal for an Order to Show Cause. *Id.* ¶ 3. The Order to Show Cause was granted, requiring PayPal to respond in writing to the OSC by June 28, or appear in court on July 5, 2012. *Id.* ¶ 4. In reliance on statements by counsel for PayPal, Angela Dunning, that PayPal would make an initial production within two to three weeks, and would not move to quash the material sought, Mr. Archer took the OSC off calendar and continued to negotiate with PayPal. *Id.* ¶ 7. In October 2012, PayPal produced some documents to defendant Miles, and explained that those were the only documents it would produce without a protective order. *See* Dkt. 399 at 2. At no point before filing a motion to quash on January 17, 2013, did Angela Dunning or any other representative of PayPal indicate that PayPal would file a motion to quash. *Id.* ¶ 8.

By December 2012, PayPal had not produced any more of the requested documents. Defendant Joshua Covelli filed under seal a lengthy and detailed ex parte motion for an identical subpoena duces tecum to PayPal.[9] The subpoena was granted on December 17, with a return date of January 10, 2013.

Mr. Covelli served the subpoena on PayPal, and also provided Ms. Dunning with a courtesy copy of the subpoena on December 19, 2012. *See* Dkt. 405-1. The cover letter to Ms. Dunning reminded her "that the matter is going to be on calendar for January 10, 2013 at 9:00 a.m.

---

[8] This application is part of Mr. Miles's sealed court file.

[9] This application is part of Mr. Covelli's sealed court file.

**OBJECTIONS TO CORRECTED ORDER RE: PAYPAL'S MOTION TO QUASH (MARCH 15, 2013);**
*United States v. Covelli*, Case No. CR 11-00471

6

1  from production of records pursuant to the subpoena." *Id.*  The following day, Ms. Dunning

2  responded: "<u>we anticipate that the production can be made promptly in January</u> once the protective

3  order is hammered out and entered by the court."  *See* Dkt. 400 (Ex. D) (emphasis added).

4

5      **B.      Motion for Production of Documents**

6      On December 27, 2012, Mr. Covelli filed a Motion for Production of Documents with

7  Magistrate Judge Grewal, and noticed the motion for January 10, ninety minutes after PayPal was

8  required to produce the documents to Mr. Covelli or to Magistrate Judge Grewal.  Dkt. 398.  This

9  notice was served on PayPal, as was a subsequently filed reply brief.  *See* Dkts. 398 & 399.  On

10  January 9, PayPal filed a response to Mr. Covelli's Motion for Production of Documents, in which

11  PayPal indicated that it intended to request a protective order but made no mention of a motion to

12  quash.  Dkt. 400.

13      On January 10, PayPal appeared in court, but did not produce any of the required

14  documents.  Rather, PayPal requested leave to file a motion for a protective order.  The court

15  granted leave to file a motion for a protective order and established a briefing schedule.  *See* Dkt.

16  401 (Minute Order).

17      Counsel for Mr. Covelli noted that PayPal had represented that it was prepared to produce

18  the responsive documents.  Counsel requested that the court hold all responsive documents until

19  making a determination on the motion for protective order.  The court declined to do so.  *See*

20  Transcript of Proceedings on PayPal's Motion to Quash (Feb. 7, 2013) [hereinafter "TR"], Dkt.

21  472, at TR 24:18-21.

22      PayPal did not request leave to file a motion to quash.  PayPal was not granted leave to file

23  a motion to quash.  *See* Dkt. 401.  PayPal did not indicate that there was any problem with the

24  subpoena itself.  In fact, PayPal represented that it was ready to produce.  TR 24:15-17.

25

26      **C.      PayPal's Motion to Quash**

27

28

On January 17, PayPal moved not merely for a protective order, but also to quash or modify both subpoenas. PayPal challenged the subpoenas with regard to <u>every</u> document, on <u>every</u> *Nixon* ground, <u>and</u> on the grounds that the subpoena was unreasonable and oppressive. PayPal included a declaration describing out-of-court subpoena discussions with the defendants, but did not provide any declaration in support of its claim that the subpoena was unreasonable and oppressive with its opening brief or reply brief. PayPal also suggested a number of possible modifications to the subpoena.

Defendants Miles and Covelli jointly opposed PayPal's motion. With regard to the Motion to Quash, they argued that the magistrate court had twice found that the subpoena meets the *Nixon* requirements; that PayPal does not have the right to object to the subpoena on *Nixon* grounds; and that PayPal was estopped from moving to quash after the documents were due to be produced, because of representations to the defendants and the court that it would not have any trouble complying with the subpoena and in fact had stated that it was ready to comply. Defendants offered to answer any further questions of the court regarding the *Nixon* factors *in camera*.

A hearing on the motion was held on February 7, 2013. At the hearing, defense counsel for Mr. Covelli again objected to the fact PayPal would "make a claim of hardship when they've already said 'We have the documents ready to produce.'" TR 24:15-17. Defense counsel noted that the court had declined to hold the responsive document on January 10, the production deadline for the subpoena. TR 24:18-21. Defense counsel reminded the magistrate court that PayPal is "not a party" and that "they do not control the trial in this matter." TR 24:24-25:2. That means that "they do not decide which objections should be made in the trial to the admissibility of the documents" to which the defendants had already demonstrated an entitlement. TR 25:3-6. "The Prosecutor is the one to object to certain evidence on certain ground, not . . . the third party alleged victim." TR 27:11-13. Defense counsel noted that PayPal "has absolutely no idea" whether the defendants had met the *Nixon* requirements, because defense counsel had already gone directly to the magistrate court to demonstrate that they had been met. TR 25:7-15.

Defense counsel noted that PayPal is only permitted to argue that the subpoena is unreasonable or oppressive – as in, "it's going to take too much time" or "it's a burden on us that we shouldn't have to meet." TR 25:23-26:8. Defense counsel noted that the proper time to argue that a subpoena is oppressive is "before" gathering the documents. TR 26:17-23. Defense counsel questioned PayPal's argument that the subpoena is "too broad" when PayPal had "already" gathered the requested documents. TR 26:17-27:1. "If they've already got the documents, it cannot be oppressive." TR 30:2-6.

Additionally, "out of an abundance of caution," defense counsel suggested that "if the Court somehow thinks maybe I got to rethink this then the Court conducts an in camera hearing with the party requesting the subpoena." TR 15:16-22. The documents, defense counsel noted, "should be now in possession of the Court, and then the Court decides how and under what circumstances we're allowed to use them." TR 31:2-6.

Defense counsel for Mr. Miles also spoke to note that

> the suggestion and the declaration and the statement today that there was anything represented to me about a problem with the breadth, the scope, the impression of te subpoena in any conversation[] is completely false.
>
> And I think it's apparent, also, from the documentation that we have, there's no mention in the emails to me. . . . Cooley is so careful as to save my voicemail and transcribe it into a declaration, but does not . . . mention in – by email or by letter – there's an October letter that says, "We're just waiting for the protective order."
>
> If that representation had been made to me that they were going [to] move to quash, I would not have taken the OSC off calendar. I was told – and the reliance that I made in [taking the] OSC off calendar was that the production would be made.
>
> I'm very disturbed that these are being made in declarations and that it's being represented to this Court right now that conversation happened.

TR 44:2-31.

For the first time, PayPal represented to the Court that it was not ready to produce all responsive documents. However, PayPal did represent that certain documents were gathered, including "some chat room materials," "logs showing the traffic that was coming in during the

**OBJECTIONS TO CORRECTED ORDER RE: PAYPAL'S MOTION TO QUASH (MARCH 15, 2013);**
_United States v. Covelli_, **Case No. CR 11-00471**

9

1  relevant time," "information relating to the . . . expense that went into addressing the attacks. . .

2  what we would consider to be the – the heart of what they're asking for."  TR 37:6-38:9.

3        The magistrate court never asked the defendants to respond to PayPal's evidentiary

4  objections, either at the public hearing or in camera, or indicated in any way that he considered

5  PayPal's evidentiary objections to be well taken or dispositive.

6

7        **D.        The March 15 Order**

8        On March 15, 2013, Magistrate Judge Grewal quashed 10 of the 13 parts of the subpoena.

9  Magistrate Judge Grewal determined that "[t]here are undoubtedly relevant, and perhaps highly

10  relevant, materials among those called for in the subpoenas – Covelli and Miles target the very

11  DDOS attack that are at the heart of the federal indictment confronting them."  Order at 6.  But, he

12  determined, "requests three, four, five and six are only relevant to the elements of the charged

13  offenses for hearsay purposes," as is "any one-time financial evaluation of the loss or damage

14  caused" (apparently describing Category 2).  Order at 6-7.  He also determined that "requests one,

15  three, six, and seven," as well as "eight, nine, and ten" are "enormous in scope" and therefore

16  constitute a "fishing expedition."  Order at 7.  Magistrate Judge Grewal quashed these portions of

17  the subpoena and ordered PayPal to turn over documents responsive to parts 11, 12, and 13 by

18  March 31.  Order at 8, 10.

19

20  **IV.      Standard of Review**

21        Under Rule 59(a) of the Federal Rules of Criminal Procedure, "A party may serve and file

22  objections to [a nondispositive] order [of a Magistrate Judge] within 14 days after being served

23  with a copy of a written order . . . . The district judge must consider timely objections and modify

24  or set aside any part of the order that is contrary to law or clearly erroneous."

25

26  **V.       Argument**

27

28

The defendants raise three objections to the portion of the March 15 Order that quashed part of their subpoena. On the basis of these objections, that portion of the order should be reversed.

The first objection is that the Magistrate Judge clearly erred considering the untimely filed Motion to Quash, and granting it in part, given partial production by PayPal and statements for more than six months that it was willing and prepared to produce the remaining subpoenaed documents.

The second objection is that the Magistrate Judge's rulings regarding admissibility and specificity were contrary to law and clearly erroneous under the Supreme Court's holding in *United States v. Nixon*, 418 U.S. 683 (1974) which requires only a "preliminary showing" regarding "potential evidentiary uses" for what the subpoenaed materials are "likel[y]" to contain – especially because expert testimony will be required at trial on the issues of loss determination and loss causation, and it is critical for defense experts and defense attorneys to review these documents prior to trial.

The third objection is that the Magistrate Judge clearly erred by not modifying parts of the subpoena he found questionable, and acted contrary to the Due Process Clause, given his finding that many of the subpoenaed documents are highly relevant and the defendants have no other way to access the information contained in them.

**A.      It was clearly erroneous for the magistrate to grant in part PayPal's untimely Motion to Quash brought over six months after PayPal began to represent that it was ready and able to produce.**

PayPal's Motion to Quash was untimely, filed a week after production was required under the Covelli subpoena, a week after representations to the magistrate court that it was ready and able to produce the subpoenaed documents, and after over six months of repeated statements to the defendants that it was ready and able to produce. Defendants argued before the Magistrate Judge that PayPal was estopped from filing the Motion, and the Magistrate Judge failed to address the

argument, instead granting the Motion in part. This was clear error, and to the extent that it quashed any part of the subpoenas, the March 15 Order should be reversed.

In June 2012, PayPal represented to Mr. Archer that it would not move to quash the subpoena, and on that basis Graham Archer took an OSC off calendar. *See* Dkt. 415-1 (Decl. of Graham Archer). PayPal produced some documents in response to the Miles subpoena in October 2012. Dkt. 399 at 2 (Response to Motion for Production of Documents From PayPal/eBay Inc.) On January 10, 2013, the production deadline for the Covelli subpoena, PayPal appeared in court and requested permission to file a motion for a protective order before producing the subpoenaed documents. On January 17, PayPal filed a motion to quash, its first indication in over six months that it did not intend to comply with the subpoenas. Even at the hearing on the Motion to Quash, while backtracking somewhat on its statements that it was prepared to product, PayPal nonetheless stated that it had gathered additional documents – some or all of the documents responsive to Category 2 and Category 4. *See* TR 37:6-38:9 (explicitly stating that PayPal had gathered "some chat room materials," and "information relating to the . . . expense that went into addressing the attacks. . . what we would consider to be the – the heart of what they're asking for").

The defendants argued that PayPal was estopped from moving to quash. On March 15, 2013, Magistrate Judge Grewal granted in part PayPal's Motion to Quash. Among other things, the March 15 Order quashed Category 2 and Category 4. This determination, made without even addressing the defendants' argument, was clearly erroneous.

According to Rule 17 of the Federal Rules of Criminal Procure, a court may only quash or modify a subpoena "[o]n motion made promptly." In this case, the motion to quash was not promptly filed. Not only had nearly one year passed since the Miles subpoena was served, but PayPal had made representations for over six months that it would not file a motion to quash, it had already produced some documents, it had only requested leave from the court to file a motion for a protective order, the Covelli subpoena was past due, and PayPal already had more documents to produce. *See United States v. Debolt*, Criminal Action No. 5:09CR24, 2010 WL 4281699 (N.D. W.Va. Oct. 19, 2010, * 3-* 4 (motion to quash "must be denied as untimely" seven weeks

1   after issuance of subpoena where nonparty "had already complied, at least in part, with the

2   subpoena").   To the extent that the March 15 Order quashed any part of the subpoenas, it should

3   be reversed.

4

5       **B.      The Magistrate Judge's ruling regarding admissibility and specificity were
                contrary to law and clearly erroneous under the Supreme Court's holding in
6                *United States v. Nixon***

7       Magistrate Judge Grewal determined that the subpoenaed documents are "undoubtedly

8   relevant, and perhaps highly relevant," as they "target the very DDOS attack that are at the heart

9   of the federal indictment confronting them."   Order at 6.   But he determined that ten categories

10  "fall short . . . with respect to . . . admissibility and specificity."   *Id.*   This determination was

11  contrary to law and clearly erroneous.   It deprived the defendants of documents that are necessary

12  to allow experts to testify loss causation and loss amount, critical elements in this case.   And it

13  deprived the defendants of documents necessary to cross examine the government's experts, who

14  are anticipated to be PayPal employees who will have access to these documents.

15

16

17      **1.      The Magistrate Judge should not have disturbed his two prior *Nixon*
                determinations, but limited review to reasonableness and oppression.**
18

19      In February 2012 and again in December 2012, Magistrate Judge Grewal issued an order

20  allowing the defendants to serve the subpoena that he later quashed in part.   Implicit in that order

21  was a finding that the defendants had met the admissibility and specificity requirements of *Nixon*

22  and Rule 17.   A defense attorney either overcomes the admissibility and specific requirements, or

23  he does not.   These are preliminary showings, not ones that can be rebutted.   Moreover, a nonparty

24  does not have information about admissibility or specificity that could cause a Magistrate to

25  question his prior determination.   A nonparty only knows whether compliance with the subpoena

26  would be unreasonable or oppressive.   This is why the only arguments that a nonparty may make

27

28

OBJECTIONS TO CORRECTED ORDER RE: PAYPAL'S MOTION TO QUASH (MARCH 15, 2013);
*United States v. Covelli*, Case No. CR 11-00471

13

are arguments that compliance is unreasonable or oppressive. And those are the only arguments that the magistrate should have considered. There is no explanation for how a magistrate's determination can change so dramatically on the *Nixon* factors, and the March 15 Order certainly does not contain any such explanation. The magistrate's consideration of - and about-face on - these questions was clearly erroneous and contrary to law.

In the Northern District of California, no subpoena is issued without a determination that the *Nixon* requirements have been met.[10] *See United States v. Krane*, 625 F.3d 568, 574 (9th Cir. 2010) ("In granting the pre-trial subpoena duces tecum, the district court necessarily engaged in a 'discretionary, case-by-base inquiry' in which the court considered these factors and the purposes for which the [subpoenaing party] sought the [subpoenaed] documents. [Citations.]"). The *Nixon* analysis can and does occur before the nonparty is aware of the subpoena. It can even happen ex parte where necessary to protect defense trial strategy, and without notice to the government, because "a court needs no assistance in applying the *Nixon* standard." *See United States v. Jenkins*, 895 F. Supp. 1389, 1397 (D. Hawai'i, 1995) (emphasis added).

As for admissibility, *Nixon* requires only a "preliminary showing" by the subpoenaing party that the objects subpoenaed are admissible (at least in part). *See Nixon*, 418 U.S. at 700

---

[10] Here, local rules have been adopted that require the government or defense to apply to the court for permission to serve a Rule 17 subpoena duces tecum. *See* Crim. L.R. 17-2 ( "A party requesting a subpoena must support its request by a declaration specifying the facts supporting the issuance of the subpoena."). This requirement is intended to make sure that attorneys do not abuse the subpoena process. *See e.g., United States v. Jenkins*, 895 F. Supp. 1389, 1395-97 (D. Hawai'i, 1995) (comparing cases from 1960s and beyond and discussing possible abuses of Rule 17 by either party).

However, this procedure is anything but universal, which likely explains why so many out-of-circuit courts (and defense attorneys appearing therein) appear not to question why the court is addressing the *Nixon* factors on a motion to quash. In those jurisdictions, the filing of a motion to quash may in fact be the first time that the court becomes aware that a subpoena was filed.

**OBJECTIONS TO CORRECTED ORDER RE: PAYPAL'S MOTION TO QUASH (MARCH 15, 2013);**
*United States v. Covelli*, Case No. CR 11-00471

14

("[T]here was a sufficient preliminary showing that each of the subpoenaed tapes contains evidence admissible with respect to the offenses charged in the indictment."). As for specificity, it requires only a specific enough description of the documents requested to "provide[] [the nonparty] enough information to lodge objections based on relevancy and admissibility." *United States v. Skilling*, Criminal No. H-04-025, 2006 WL 1006622 (S.D. Tex. April 13, 2005). Either a defendant makes a "preliminary showing" of admissibility and specificity, or he does not.

On two prior occasions before the March 15 Order, Magistrate Judge Grewal had already found that the defendants were entitled to receive the subpoenaed documents before trial under the standard announced in *Nixon* and Rule 17(c).[11]

At that point, under the clear language of Rule 17(c), PayPal was limited to objecting that compliance with the subpoena would be unreasonable or oppressive. That is to say, it was limited to presenting facts and arguments that the court had not already considered, such as the difficulty it would have gathering certain documents, or the potential applicability of specific evidentiary privileges that the court would need to weigh against the defendants' due process rights. But PayPal had represented for over six months that it could and would comply with the subpoena, and it had told the court as much. Moreover, it reaffirmed at the hearing on the Motion to Quash that it had already gathered specific documents responsive to Categories 2 and 4.

Magistrate Judge Grewal did not find that compliance would be unreasonable or oppressive. Instead, he reversed his two prior determinations regarding admissibility and specificity.

---

[11] With leave of the Court, Mr. Miles (in February 2012) and Mr. Covelli (in December 2012) each filed a lengthy and detailed ex parte motion and supporting declaration under seal. *See United States v. Tomison*, 969 F. Supp. 587, 592-93 (E.D. Cal. 1997); Crim. L.R. 17-2. The magistrate court issued the subpoena on both occasions, an implicit indication that found that the defendants had satisfied the *Nixon* and Rule 17 requirements. *See Krane*, 625 F.3d at 574.

It is not clear how the subsequent litigation could have changed the fact that defendants made the required *Nixon* showings. The defendants identified the subpoenaed document by their contents, which is all that is required. Contrary to the magistrate's determination, the subpoena has nothing in common with the problematic "fishing expedition" identified in the seminal case *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951), where the defendants had included a "catch-all provision" for all documents "relevant to the allegations or charges contained in said indictment" without any more specific description. *Id.* at 221. And either the defendants made a preliminary showing of admissibility, or they did not.

Magistrate Judge Grewal previously found that the defendants met the *Nixon* requirements. Twice. But rather than reviewing the subpoena only for unreasonableness and oppression, he conducted a *Nixon* analysis anew, and reversed his two prior determinations without explanation. This was clearly erroneous and contrary to law.

 2. **The Magistrate Judge should not have quashed parts of the subpoena, which are necessary to allow for expert testimony in this case, on the basis of premature and erroneous evidentiary objections by a nonparty.**

PayPal is not a party to this case. PayPal will not participate in the trial. PayPal does not owe the defendants any duty with respect to the right to due process or a fair trial. The government and the courts do. The government will determine what objections to raise at trial. This Court will rule on those objections, on the basis of the evidence that has been presented and the arguments of the parties. It is error for a magistrate court to permit a nonparty to make premature evidentiary determinations, particularly if he has not examined the subpoenaed documents. Here, the subpoenaed documents are all clearly necessary for an expert to review before forming any opinion on loss causation or loss amount, critical elements in this case. In quashing parts of the subpoena, thereby denying defendants documents that are necessary to allow

for expert testimony in this case, on the basis of premature and erroneous evidentiary objections by a nonparty, was clearly erroneous and contrary to law.

As a preliminary matter, all relevant evidence is admissible. Fed. Rule Evid. 402. The magistrate court determined that the subpoenaed documents were "relevant" or even "highly relevant" to the "heart" of the prosecution. The magistrate court also noted that the four categories that he ultimately quashed "might qualify for one or more of the many exceptions to the hearsay rule." This should have ended the inquiry. *Nixon*, 418 U.S. at 700 (holding that the admissibility requirement simple means that the defendants make "preliminary showing" regarding "potential evidentiary uses" for what the subpoenaed materials are "likel[y]" to contain).

Instead, Magistrate Judge Grewal made a determination, without examining the subpoenaed documents, that five different categories of documents contained only "inadmissible hearsay." Order at 6. This was clearly erroneous and contrary to law.

Almost no document is *ipso facto* admissible. *See* Fed. R. Evid 902 (regarding self-authenticating evidence.) At trial, a party must provide foundation for the document and find a competent witness who can authenticate the document. There are sixty eight federal rules of evidence, meaning sixty eight paths to either admissibility or inadmissibility. Must a subpoenaing defendant anticipate all possible evidentiary objections to subpoenaed documents that he has never seen? Must he include in his subpoena application a plan to authenticate each document and provide foundation for its admissibility? Must he indicate in the application which witness he will call to authenticate the document? Must he demonstrate that witness will be available the day of trial and competent to testify? Must he show that the evidence will not be prejudicial, confusing, or a waste of time? To do that, must he not address each and every piece of evidence and witness that he anticipates will be called at trial? Must he do all of this without ever having had the opportunity to review the documents?

The answer is no.  *Nixon* makes clear that all that is required is a "preliminary showing" regarding "potential evidentiary uses" of <u>some portions</u> of the subpoenaed documents.  The defendants made just such a showing in their applications for the subpoena, explaining the potential evidentiary uses of the different categories of documents sought.  The defendants offered to answer any additional questions regarding the *Nixon* factors *in camera*.

But Magistrate Judge Grewal quashed portions of the subpoena without accepting or rejecting the defendants' initial showing; without asking the defendants for any further showing at the hearing on PayPal's motion; and without responding to defendants' offer to make a showing *in camera*.  In fact, at the February 7 hearing, he expressed serious skepticism regarding PayPal's arguments on inadmissibility, questioning PayPal how one might "delineate what is reasonably or likely to be admitted at trial without understanding the full scope of the potential material?"  TR 9:22-25;  *see also id.* at 9:18-21 ("I've always struggled candidly with understanding how it is one is to ascertain [this.]").  Further, he challenged PayPal with the very serious question of whether "we can send people to jail, even though a victim has a document, which would impeach something that a Government witness would say?"  TR 21:19-21.

He did not ask any similar question to the defendants.  Nor did he respond to defendants' offer to address the arguments in camera – even though he had already made a determination (when he allowed the defendants to apply for their subpoenas under seal) that defendants' should be permitted to discuss trial strategy ex parte and in camera.

Ultimately, Magistrate Judge Grewal made premature evidentiary determinations based on objections raised by a nonparty.  Additionally, his evidentiary determination - that the documents sought are "inadmissible" hearsay – was incorrect as a matter of law.

As a preliminary matter, evidence is only "inadmissible" hearsay if it is first objected to.  PayPal does not have standing to raise any evidentiary objection in this case that is not based on

privilege; nor is it appropriate for a court to speculate about such objections prior to trial or motions in limine.

Second, it is clear that loss causation and loss amount – two elements of the charged offenses – can only be established or refuted through expert testimony.[12]  *See* Transcript of Proceedings (January 10, 2013) (Judge Jensen: "It seems to me that it's almost necessary that there be an expert that testifies as to damages and as to come of this material.").  Under the Federal Rules of Evidence,

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Fed. R. Evid. 702 (emphasis added).  It was, at the very least, error for the Magistrate Judge to quash Category 2.

Third, contemporaneous statements attributable to a corporation regarding damage to that corporation are arguably admissible as present sense impressions, excited utterances, or statements of a then-existing physical condition.  Fed. R. Evid. 803(1)-803(3).  They could be admissible as recorded recollections.  Fed. R. Evid. 803(4).  Exculpatory statements, moreover, are likely to be statements made against the interest of the corporation.  Fed. R. Evid. 804(b)(3).  Certain of the

---

[12] In this case, it is anticipated that the government will call PayPal employees to testify as expert witnesses.  Not only would the documents relied upon by these experts be admissible upon cross examination, but the documents available to these experts that were not reviewed would be appropriate grounds for impeachment.  It is hard to imagine a scenario where the documents already identified as relevant by the magistrate judge would not be proper grounds for expert testimony or expert impeachment.

Additionally, the defense will be entitled to call expert witnesses to opine on the issues at the heart of this case including overall damage to PayPal, the impact, if any, of a particular defendant's participation in the event. All relevant documents have the strong potential to contribute to an informed expert opinion. The denial of access to documents acknowledged to be in the possession of PayPal would deny the defendants the right to call experts in their defense who have formed a competent and informed opinion in violation of the Sixth Amendment.

subpoenaed documents contain statements of indicted or unindicted coconspirators – certainly statements that could be admissible at trial. And in certain cases, summaries can be used to prove content. Fed. R. Evid. 1006.

Fourth, not all cross examination is impeachment, and not all impeachment evidence is protected from discovery before trial. To impeach means to "attack [a] witness's credibility." *See* Fed. R. Evid. 607. While impeachment is a form of cross examination, a defense attorney can accomplish many more things during cross examination. For example, a defense attorney can elicit a more complete and less one-sided story. *Cf.* Fed. R. Evid. 106. When cross examining an expert, a defense attorney can help a jury determine how much weight to give to the expert's conclusions by determining whether the expert has examined certain relevant documents. If he has, the defense attorney can then introduce these documents to the jury, even if they are otherwise-inadmissible hearsay. Fed. R. Evid. 703. There is no limitation on a defense attorney's ability to subpoena relevant and specific documents before trial to be used for these non-impeachment purposes.

In *Nixon* and its progeny, courts have noted that "generally" impeachment evidence cannot be subpoenaed before trial. This is because "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701. But this is not an absolute rule. *See, e.g., United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988) (upholding order permitting pretrial subpoena of impeachment material). In the case where the alleged victim is a large, multi-national corporation who did a significant portion of the investigation of this case itself, the question of impeachment is significantly more complicated than with the typical individual complainant, or where it is not clear whether the impeachment evidence is relevant to a witness who will actually be called to the stand. To require the defendants to wait until trial to gather known impeachment documents to use to challenge the

credibility of an alleged corporate victim is to create a situation where thousands of documents will be produced during trial, necessitating considerable delays in the trial. In the Ninth Circuit in particular, courts recognize an inherent authority for the court to "manage their cases and courtrooms effectively" in the context of pretrial discovery. *See, e.g., United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (en banc) (quotation marks and citation omitted). This includes enforcing Rule 17 subpoenas that call for impeachment documents to be turned over before trial.

Fifth, the magistrate court simply cannot do the type of careful evidentiary scrutiny that it found proper in this case without actually examining the subpoenaed documents. Hearsay and other evidentiary determinations do not revolve around the simple question of whether a document contains an out-of-court statement. Rather, they require that the judge scrutinize the out-of-court statements to determine what the contents of the statements are, who made them, when they were made, whether they were made in circumstances that assure their reliability, etc. They require that the judge scrutinize the out-of-court statements to determine whether they are of a type upon which an expert might reasonably rely.

The defendants recognize that several district courts have approached the question of admissibility in the same manner as the magistrate, but they have done so in violation of the holding in *Nixon*. For example, Magistrate Judge Grewal relied on a single district court case that in turn did not cite a single case in support of its exacting rule regarding demonstration of admissibility. *See* Order at 6-7 & n. 16 (citing *United States v. Reyes*, 239 F.R.D. 591, 600 (N.D. Cal. 2006), which in turn discusses possible evidentiary objections without citation to any case law). These cases conflict with *Nixon* and they should not be relied upon.

Finally, the magistrate should have taken custody of the documents to allow his decisions to be reviewable – by this Court, now and at trial, and by the Ninth Circuit on appeal.

**OBJECTIONS TO CORRECTED ORDER RE: PAYPAL'S MOTION TO QUASH (MARCH 15, 2013);**
<u>*United States v. Covelli*</u>**, Case No. CR 11-00471**

21

1

2          **C.      The Magistrate Judge should have considered modification of the subpoena.**

3          Finally, the Magistrate Judge clearly erred by not considering modification of the subpoena

4   to allow defendants to access documents that he determined were "relevant" or "highly relevant"

5   and went to the "heart" of the case.   This error is especially pronounced because PayPal

6   represented to the court that it had already gathered documents in Categories 2 and 4, made other

7   representations that it was prepared to produce <u>all</u> subpoenaed documents, and specifically

8   suggested to the court as to how it might modify rather than quash the subpoena with regard to

9   Categories 2, 4 and 5.   *See* Motion to Quash at 13-17 (suggesting modifications that would

10  "lessen the burden imposed on [PayPal]").

11         The March 25 Order specifically notes that the subpoenaed documents go to the "heart of

12  the federal indictment confronting" the defendants.   It notes how important it would be for the

13  defendants to have access to, for example, "internal . . . records concerning [PayPal's] losses from

14  the attack."   Order at 6.   It notes "that the defense may have no other means of accessing"

15  information contained in certain subpoenaed documents.  Order at 7.

16         Criminal defendants have a clear due process right to exculpatory evidence.   *Brady v.*

17  *Maryland*, 373 U.S. 83 (1963).   While *Brady*, *Giglio*, and their progeny do not require PayPal to

18  examine their own files *sua sponte* and turn over to the defendants, as the government is required

19  to do, the courts are government officers and they are bound to guarantee that criminal defendants

20  are accorded due process, including when resolving objections to Rule 17 subpoenas.

21         As the *Nixon* court explained:

22         The right to the production of all evidence at a criminal trial similarly has
           constitutional dimensions. The Sixth Amendment explicitly confers upon every
23         defendant in a criminal trial the right 'to be confronted with the witnesses against
           him' and 'to have compulsory process for obtaining witnesses in his favor.
24         Moreover, the Fifth Amendment also guarantees that no person shall be deprived
           of liberty without due process of law. It is the manifest duty of the courts to
25         vindicate those guarantees, and to accomplish that it is essential that all relevant
           and admissible evidence be produced.
26

27  418 U.S. at 711.

28

While the defendants do not have an absolute right to all documents that they request, they certainly have a right to have "all relevant and admissible evidence produced" – particularly here, where the magistrate court did not make <u>any</u> finding that production of the subpoenaed documents would have been unreasonable or oppressive.

The magistrate had a constitutional obligation to require PayPal to produce at least a subset of each category of documents. The magistrate should have modified rather than quashing Categories 1 through 10 of the subpoena.[13]

VI.    **Conclusion**

For the foregoing reasons, the portion of the March 15 Order that quashed the subpoena in part was clearly erroneous and contrary to law. It should be reversed, and PayPal should be ordered to provide the defendants with all documents responsive to Categories 1 through 10 forthwith.

                              Respectfully submitted,

                              NOLAN, ARMSTRONG & BARTON, LLP


                                    /s/
Dated:  March 28, 2013       _____
                              Thomas J. Nolan
                              Shira Kieval
                              Attorney for Defendant Joshua Covelli


                                    /s/
Dated:  March 28, 2013       _____
                              Graham Archer
                              Attorney for Defendant Ethan Miles

---

[13] Defense counsel note that they intend to file narrower subpoena applications while these objections are pending. Such subpoena applications will not moot these objections. The objections are primarily objections of law, and it is critical that the law of the case be properly settled at this time in order to guarantee that defendants receive a fair and speedy trial.

1

## <u>ATTESTATION PER CIVIL L.R. 5-1(i)(3)</u>

2   I, Shira Kieval, have permission from ECF user Thomas J. Nolan to use the ID and

3 password being used to file these objections.  In compliance with Civil L.R. 5-1(i)(3), I hereby

4 attest that Graham Archer has concurred with this filing.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28